IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


EARL ROBERT MERRITT JR.

      Plaintiff,

v.                            Case No. 2:06-cv-00885

LUCY FLORENCE COCHRAN-YOUELL, et al.,

      Defendants.


EARL ROBERT MERRITT JR.

v.                            Case No. 2:07-cv-00041

LUCY FLORENCE COCHRAN-YOUELL et al.,

      Defendants.


## PROPOSED FINDINGS AND RECOMMENDATION

Plaintiff, Earl Robert Merritt Jr., has filed two civil actions under the civil enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (the "RICO Act" or "RICO").  Both of these civil actions are assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and both are referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2)(B), in a proceeding, such as here, where the Plaintiff is proceeding in forma pauperis (without prepayment of fees), the court shall dismiss the case at any time if the court determines that the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

Section 1915(e)(2) requires judges to dismiss frivolous claims based on indisputably meritless legal theory or claims whose factual contentions are clearly baseless, fanciful, fantastic or delusional. Denton v. Hernandez, 504 U.S. 25, 33 (1992). In reviewing factual allegations, a court need not accept irrational or wholly incredible allegations whether or not there are judicially noticeable facts available to rebut them. Id. at 303-33.

A Complaint fails to state a claim upon which relief can be granted if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Veney v. Wyche, 293 F.3d 726 (4th Cir. 2002)(complaint dismissed under 28 U.S.C. § 1915 for failure to state a claim upon which relief could be granted).

2

However, the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

Because it is "beyond doubt" that Plaintiff's Complaints fail to allege facts entitling him to relief, he should not be given an opportunity to offer evidence in support of his claims. See, <u>Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

## PERTINENT RICO ACT PROVISIONS

As noted by the United States Supreme Court in <u>Beck v. Prupis</u>, 529 U.S. 494, 496 (2000), Congress enacted RICO "for the purpose of seek[ing] the eradication of organized crime in the United States...."  The Court further stated:

> Congress found that "organized crime in the United States [had become] a highly sophisticated, diversified, and widespread activity that annually drain[ed] billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption. [84 Stat. 922].  The result was to "weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens." <u>Id.</u> at 923. Finding the existing "sanctions and remedies available to the Government [to be] unnecessarily limited in scope and impact," Congress resolved to address the problem of organized crime "by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." <u>Ibid</u>.

3

RICO attempts to accomplish these goals by providing severe criminal penalties for violations of § 1962, see § 1963, and also by means of a civil cause of action for any person "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (1994 ed., Supp. IV).

529 U.S. at 496.

Section 1964(c) of Title 18 provides as follows:

Any person <u>injured in his business or property by reason of a violation of section 1962</u> of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

18 U.S.C. § 1964(c)(emphasis added).  Thus, a civil cause of action is available to anyone whose "business or property" is injured "by reason of" a violation of section 1962.  Section 1962 lists the activities that are prohibited under the Act:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

* * *

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

4

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)  Thus, the undersigned will attempt to address Plaintiff's Complaints under this liberal standard.  However, the court is not expected to develop tangential claims from scant assertions in a complaint, and the court does not act as an advocate for a pro se plaintiff.  See Beaudett v. City of Hampton, 775 F.2d 1274, 1277-78 (4th Cir. 1985)("District judges are not mind readers"); Weller v. Dept. of Social Servs., 901 F.2d 387 (4th Cir. 1990).

Plaintiff's Complaints do not specify which subsections of section 1962 he believes the defendants have violated.  The undersigned does not believe, however, that Plaintiff can establish any claims under sections 1962(a) or (b) because Plaintiff has not alleged that any of the defendants have acquired or maintained an interest in or control of an enterprise which is engaged in, or the

activities of which affect, interstate commerce, through a pattern of racketeering activity or using income derived therefrom.  Based upon Plaintiff's allegations, it appears that any claims Plaintiff is making under the RICO statute, must be brought, if at all, only under sections 1962(c) and/or (d).

As stated above, section 1962(c) states that it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity.  18 U.S.C. § 1962(c).  Generally, to establish a claim under section 1962(c), the plaintiff must prove that (1) a defendant person (2) was employed by or associated with an enterprise (3) that engaged in or affected interstate commerce and that (4) the defendant person operated or managed the enterprise (5) through a pattern (6) of racketeering activity, and (7) the plaintiff was injured in its business or property by reason of the pattern of racketeering activity.

Section 1962 (d) simply states that it shall be unlawful for any person to conspire to violate subsections (a), (b) or (c).  18 U.S.C. § 1962(d).  *Black's Law Dictionary* defines a conspiracy as:

> A combination or confederacy between two or more persons formed for the purpose of committing, by their joint efforts, some unlawful or criminal act, or some act which is innocent in itself, but becomes unlawful when done by the concerted action of the conspirators, or for the purpose of using criminal or unlawful means to the

6

commission of an act not in itself unlawful.

BLACK'S LAW DICTIONARY 382 (Rev. 4th ed. 1968); see also Dixon v. American Indus. Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979)(defining civil conspiracy under West Virginia law).

The majority of Plaintiff's allegations concern an alleged conspiracy by the other defendants in combination with Lucy Florence Cochran-Youell to commit criminal acts or to cover them up.  Even though Plaintiff has alleged a vast conspiracy, he must also establish that each defendant joined in the conspiracy specifically to violate the RICO statutes and to injure Plaintiff in his property interest.  An "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)."  Beck, 529 U.S. at 505.

Before turning to an analysis of Plaintiff's claims, the court must define various terms, such as "pattern of racketeering activity" and "enterprise," as used in the RICO Act.  Section 1961 contains statutory definitions of various terms used in the RICO Act.  As used in the relevant chapter, the following terms are defined:

> (1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; [(B)-(G) lists acts that are indictable under various provisions of the

7

United States Code (specific code sections omitted)];

* * *

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

18 U.S.C. § 1961.

## **PLAINTIFF'S ALLEGATIONS**

To be sure, these two civil actions are not typical civil RICO actions.  In Plaintiff's first Complaint, he alleges that his aunt, defendant Lucy Florence Cochran-Youell (hereinafter "Lucy"), has engaged in various instances of fraud and theft of property from family members, and further alleges that she was either personally involved in, or contracted for, the murder of Plaintiff's brother, Steven Mark Merritt ("Steve"), in order to obtain control over additional family assets that Plaintiff states would have passed to him and his brothers.  Plaintiff further alleges that Lucy was motivated to have Steve killed because he had acted as a confidential informant in government drug investigations, and had allegedly informed on drug activity involving Lucy and her children and grandchildren.

8

Plaintiff's first Complaint further alleges that Father Edward Sadie and Father Albert Alexandeunas, two Roman Catholic priests in the Charleston, West Virginia area, promised to help resolve a dispute between Plaintiff and Lucy over family real estate holdings, but subsequently broke their promises and sided with Lucy, which caused Plaintiff to recall suppressed memories of having been sexually abused by two other Roman Catholic priests, who were assigned to the same parishes as Father Sadie and Father Alexandeunas, when Plaintiff was a teenager.

Thus, Plaintiff's Complaint also alleges that Father Sadie and Father Alexandeunas, as well as various other members of the hierarchy of the Roman Catholic Church, up to and including the current Pope and previous Popes, have engaged in a cover-up of sexual abuse by its priests.  Plaintiff alleges that the conduct of these defendants constitutes additional violations of the civil RICO statutes.

Plaintiff further alleges that a vast conspiracy exists among private persons and federal and state governmental agencies and officials to cover up Lucy's fraud and corruption, and that each and every one of these individuals or entities has been unlawfully influenced by Lucy and, therefore, obstruction of justice has occurred.

Plaintiff's second Complaint (Case No. 2:07-cv-00041) focuses almost solely on the conduct of the Roman Catholic Church

defendants, again alleging RICO violations arising out of the alleged cover-up of Plaintiff's sexual abuse by two Charleston priests, and the involvement of Father Sadie and Father Alexandeunas in Lucy's alleged "real estate fraud." The second Complaint, therefore, also names Lucy as a defendant, and again alleges that she "conspired and colluded in the murder of Steven Mark Merritt on June 11, 2003" and that she "stole and sold illegally the property of Steven Mark Merritt in June of 2004. This property by rights[] should have been the estate of the brothers of Steven Mark Merritt." (# 2 at 6). Thus, in both Complaints, Plaintiff attempts to allege RICO violations based upon Lucy's alleged criminal conduct, the alleged cover-up thereof, and the allegations concerning the cover-up of Plaintiff's sexual abuse.

A more detailed discussion of some of the facts alleged in Plaintiff's Complaints and the defendants named therein appears to be in order.

<u>Allegations in First Complaint</u>

Plaintiff alleges that, in 1956, Lucy's husband, George Youell, Jr., raped Plaintiff's mother, Rebecca Cochran-Merritt, which resulted in the conception of Plaintiff's brother, Steve. (Case No. 2:06-cv-00885, # 2 at 6). Plaintiff states that "THIS IS THE PRIME MOTIVE THAT LUCY FLORENCE YOUELL (DEFENDANT) MURDERED MY BROTHER STEVEN MARK MERRITT ON JUNE 11, 2003. <u>Id.</u> Plaintiff

makes further allegations that Lucy stole family heirlooms, and money left by her parents upon their deaths, from the estates of her sisters, Rebecca and Anne Cochran. (<u>Id.</u> at 6-7).

Plaintiff further alleges that his uncle, Oscar Cochran (Lucy's brother) improperly acquired a survivorship conveyance on a piece of property that Steve owned, which was located at 5729½-A Midland Drive in Charleston, West Virginia. (<u>Id.</u> at 7).

Plaintiff further alleges that Lucy placed her mother-in-law, Mrs. George Youell, into Heartland Nursing Home in 1990 and, upon her death, Lucy acquired sole ownership of her mother-in-law's home located at 303 Clemson Avenue in Charleston, West Virginia. (<u>Id.</u> at 8). Plaintiff alleges that Plaintiff has made additional money by renting the main house on that property to her grandson, Brandon, and his wife, Mandy. Plaintiff alleges that Lucy also rented a garage apartment located on the property to an unnamed retired agent of the United States Bureau of Alcohol, Tobacco and Firearms ("ATF"). (<u>Id.</u>) Plaintiff alleges that "THIS PROVES THE CONSPIRACY THAT DEFENDANT LUCY FLORENCE YOUELL IS A CONSPIRATOR TO COMMIT FELONY THEFT." (<u>Id.</u>)

Plaintiff further alleges that, on December 8, 2000, Lucy had her brother, Oscar, who had suffered a mild stroke, sign a Power of Attorney, giving Lucy limited powers to assist him with certain financial transactions. Plaintiff alleges that the stroke did not render Oscar physically or mentally disabled. (<u>Id.</u> at 38).

11

Plaintiff further alleges that Lucy fabricated allegations that Steve had abused and neglected Oscar, and that Lucy caused Plaintiff to file several complaints with the State of West Virginia concerning the alleged abuse and neglect, which were determined to be unfounded. (Id. at 38-39).

Plaintiff further alleges that Lucy ultimately had Oscar declared incompetent and had herself appointed as Oscar's legal guardian. (Id. at 40-41). Plaintiff alleges that Lucy was assisted in this process by attorney Thomas W. Smith, who is also named as a defendant in both complaints. According to Plaintiff, both Lucy and attorney Smith are employed in the office of West Virginia State Senator Jeffrey Kessler. (Id. at 42).

Plaintiff alleges that, on several occasions between January 2000 and November of 2002, Oscar told Plaintiff that Lucy was "stealing [him] blind" and asked Plaintiff if he or his brother Danny [Charles Daniel Merritt] could help him out. (Id. at 35).

Plaintiff further alleges that, in January of 2002, Lucy found a fully-paid life insurance policy belonging to Plaintiff's brother, Charles Daniel Merritt ("Danny"), taken out on the lives of Plaintiff's grandparents, William and Stella Cochran. Plaintiff alleges that Lucy cashed in the policy and deposited the money in her personal bank account. (Id. at 43). In essence, Plaintiff is alleging that Lucy fraudulently obtained money that belonged to Danny.

12

Plaintiff further alleges that, on December 2, 2002, Oscar signed another document giving Lucy full Power of Attorney. Plaintiff claims that this was a fraudulent transaction because Oscar was allegedly forcibly medicated at the time. Plaintiff further alleges that Oscar's doctor (who is unnamed in the Complaint) colluded and conspired with Lucy to get Oscar to sign the Power of Attorney. Plaintiff further alleges that, after becoming Oscar's Power of Attorney, Lucy began to use Oscar's assets for her own purposes. (<u>Id.</u> at 44-45). Plaintiff also names Patty J. Sims, the Notary Public who witnessed the signing of the Power of Attorney, as a co-conspirator in this conduct. (<u>Id.</u> at 44).

Plaintiff further alleges that, from on or about November 22, 1999, to June 11, 2003, Steve served as a confidential informant ("CI") for the West Virginia State Police, the United States Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), and the Kanawha County Sheriff's Office. (<u>Id.</u>) Plaintiff alleges that, in the course of Steve's service as a CI, he had informed these law enforcement agencies about drug activity involving the following individuals, who are Lucy's children and grandchildren: Linda Youell-Taylor (daughter), Donald Taylor (son-in-law), Jonathan Youell (son), Sherry Youell (daughter-in-law), Anne Youell-Nelson (daughter), Donnie Nelson (son-in-law), Brandon Youell (grandson), and Mandy Youell

13

(Brandon's wife).  (Id. at 8-10).  Plaintiff further alleges that the unnamed retired ATF agent living on her property had told Lucy about Steve's service as a CI, and that she was aware that he had informed on her family.  (Id. at 10).

Plaintiff alleges that "THIS POINT PROVES THAT DEFENDANT LUCY FLORENCE YOUELL EITHER CONTRACTED THE MURDER OF MY LATE BROTHER STEVEN MARK MERRITT AND/OR ALSO SUGGESTS THAT DEFENDANT LUCY FLORENCE YOUELL AND *OTHERS* WERE PERSONALLY INVOLVED IN THE MURDER OF MY BROTHER STEVEN MARK MERRITT.  THIS POINT ALSO PROVES THE 'IMPENDING, INTERFERENCE AND OBSTRUCTION OF JUSTICE OF LOCAL, STATE AND FEDERAL INVESTIGATIONS INTO DRUGS AND OTHER ILLEGAL ACTIVITIES INCLUDING COVER-UP AND MURDER.'  SOME OF THESE UNLAWFUL ACTS WERE INTERSTATE INVOLVEMENT.  THIS POINT ALSO PROVES THAT DEFENDANT LUCY FLORENCE YOUELL AND OTHERS *USED* A RETIRED FEDERAL ATF AGENT TO EXTRACT CONFIDENTIAL RECORDS TO REVEAL A CONFIDENTIAL INFORMANT AND THE NATURE OF HIGHLY CONFIDENTIAL *PENDING AND ON-GOING INVESTIGATIONS*.  THIS POINT ALSO CONSTITUTES AND CORROBORATES ALL THE ABOVE NAMED IN THIS POINT AS CO-DEFENDANTS AND CO-CONSPIRATORS TO THE ABOVE LISTED CRIMES.  *THIS POINT ALONE CONSTITUTES THE CRITERIA OF FILING OF THE RICO ACT LAWSUIT*.  (Id. at 10-11).  These allegations are repeated against each of Lucy's children and grandchildren listed above.  (Id. at 11-35).

Plaintiff further alleges that, on or about May 1, 2003, Steve was facing bankruptcy, so Oscar offered to give him some money.

14

However, Plaintiff further alleges that, when Lucy found out about Oscar's offer, she froze Oscar's assets, so that he could not give Steve any money. Plaintiff states "This was defendant Lucy Florence Youell's SECOND MOTIVE OF CONSPIRACY for theft of her brother['s] money and the murder of my late brother Steven Mark Merritt." (Id. at 47).

Steve Merritt died on June 11, 2003. Plaintiff alleges that Steve was murdered, that Lucy and her children and grandchildren are co-conspirators in the murder, and that they have obstructed justice and impeded or interfered with local, state and federal investigations into various illegal activities involving Lucy and her family. (Id. at 10). As stated above, these allegations are repeated against each of Lucy's children and grandchildren in the first Complaint. (Id. at 11-35).

Plaintiff alleges that Lucy began planning her conspiracy to murder Steve sometime in 2000. (Id. at 36-37). Plaintiff's Complaint further alleges that Lucy asked Plaintiff to help her find someone to kill Steve. Specifically, Plaintiff alleges that, in June of 2002, while Lucy and Plaintiff's cousin, defendant Joyce (Teddie) Hess, were in New York, Lucy slipped Plaintiff a $100 bill as an incentive to help her find someone to murder Steve. (Id. at 37, 44). Plaintiff further alleges that, on or about March 15, 2003, Lucy called Plaintiff in New York, from West Virginia, and again asked him if he knew "any niggers that you went to school

with to kill Steve?"  (<u>Id.</u> at 46).

On June 11, 2003, Steve's girlfriend, Frances Stevens, called Plaintiff to tell him that Steve had died.  According to the Complaint, Frances stated that she had been in the kitchen and that Steve "was lying face down in the living room on the sofa and that his face was blue."  (<u>Id.</u> at 48).  Frances allegedly denied that Steve had been using drugs at the time of his death.  (<u>Id.</u>)  However, Plaintiff alleges that he believes that Steve was administered "tainted and lethal drugs."  (<u>Id.</u> at 49).  The autopsy report, which in included in documents Plaintiff has provided in support of his complaints, indicates that Steve died of "cocaine intoxication."  (# 18-4 at 7 in Case No. 2:06-cv-00885).

Plaintiff further alleges that he tried to call Lucy after finding out about Steve's death, and that Lucy answered the phone "as if she had just walked in the door."  (# 2 at 49 in Case No. 2:06-cv-00085).  Plaintiff further alleges that Lucy responded "with a laughter of relief and guilt" upon learning of Steve's death.  (<u>Id.</u>)  Plaintiff further alleges that Lucy and Frances "had an existing lesbian relationship."  Plaintiff alleges that Lucy participated in the relationship in order to "conspire to commit [Steve's] murder."  (<u>Id.</u>)  Plaintiff further alleges that Lucy "expressed delight" in Steve's death.  (<u>Id.</u> at 49-50).

On June 13, 2003, the funeral director handling Steve's funeral arrangements called Plaintiff and asked if he knew whether

16

there was a life insurance policy on Steve.  Plaintiff allegedly stated that he did not know of any policy, but that Lucy might know of one.  The funeral director allegedly told Plaintiff that Lucy had denied that there was such a policy.  (<u>Id.</u> at 50).  However, Plaintiff further alleges that, sometime in October of 2003, a $25,000 check was issued by Western-Southern Life Company on a policy on Steve's life, which named Oscar as the beneficiary.  Plaintiff alleges that Lucy stole the check and deposited it into her personal bank account.  (<u>Id.</u> at 57).

Plaintiff further alleges that Lucy would not allow Oscar to use his own money to pay for Steve's funeral, and that Lucy "forced" Plaintiff and his brothers to sign cremation consent forms to permit Steve's body to be cremated against their will because it was the cheapest form of a funeral.  (<u>Id.</u> at 50-51).  Plaintiff alleges that Lucy wanted Steve to be cremated in order to cover up evidence that he had been murdered.  (<u>Id.</u> at 58).

However, Plaintiff further alleges that, after his brother Danny had written a check for $1,500 to the funeral home, Lucy sent $4,000 of Oscar's money to pay the funeral home for the total expenses, knowing that the overpaid amount would be refunded to Oscar.  Plaintiff further alleges that Lucy intercepted the refund check in the mail and deposited it into her personal bank account.  Accordingly, Plaintiff alleges that Lucy has engaged in "fraud, forgery and mail theft."  (<u>Id.</u> at 52).

17

Plaintiff further alleges that, on or about June 10, 2003, Father Edward Sadie, pastor of the Sacred Heart Co-Cathedral Roman Catholic Church in Charleston,

> was contacted to intercede in the grave on-going dispute with defendant Lucy Florence Youell and myself (plaintiff) regarding the home of my late brother Steven Mark Merritt located at 5729½-A Midland Drive, Charleston, West Virginia 25306. Father Sadie PROMISED that he would personally resolve the matter in a[n] expeditious and amiable way. Father Sadie quickly sided with my defendant Lucy Florence Youell and he betrayed plaintiff. This betrayal made suppressed memory return to plaintiff at the time 1961-1962 that when plaintiff attended Sacred Heart Catholic High School, took catechism at the Sacred Heart Rectory, baptized, first confession, received Holy Communion, and attended mass at the Sacred Heart Catholic Church that PLAINTIFF WAS ALSO ABUSED SEXUALLY BY FATHER COLIN DONOHUE IN THE RECTORY OF SACRED HEART IN CHARLESTON, WEST VIRGINIA!! FATHER EDWARD SADIE NEVER MADE A POLICE REPORT AFTER BEING INFORMED THAT PLAINTIFF WAS RAPED BY ONE OF HIS PEDOPHILE PRIEST[S]!

(Id. at 47). Plaintiff further alleges that "Father Sadie is participating in a massive cover-up of a felony crime committed against the plaintiff by Fa[th]er Donahue of a sex abuse case," that "Father Sadie aided and abetted real estate fraud and stealing from the dead along with defendant Lucy Florence Youell," and that "Father Edward Sadie committed obstruction of justice." (Id. at 48).

Plaintiff further alleges that, when he and his current wife, Debbie, were married in Malden, West Virginia, on July 13, 2003, Lucy allegedly told two guests at the church that she intended to give Steve's house to Plaintiff and Debbie as a wedding present.

18

(Id. at 52).   However, on the same day, Lucy allegedly refused Plaintiff's request to buy Steve's house, using racial and ethnic slurs against Plaintiff and Debbie.[1]   Plaintiff alleges that the remarks that Lucy made constitute a civil rights violation and are federal and state "hate crimes."   (Id. at 52).

Plaintiff further alleges that, on August 20, 2003, Plaintiff sent Lucy a letter pleading that she allow Plaintiff and his brothers to have Steve's property located at 5729½-A Midland Drive. Lucy allegedly said, "I am going to do exactly that." (Id. at 53). Plaintiff alleges that he has this conversation on tape.  (Id.)

Plaintiff further alleges that, on August 21, 2003, Lucy called Plaintiff's brother, Danny, in Virginia, and threatened that her sons-in-law would shoot Plaintiff if he caused her to have a heart attack.  Plaintiff alleges that Joyce (Teddie) Hess assisted Lucy in making the phone call.  (Id. at 54).  Plaintiff alleges that the details of this "interstate telephonic death threat" were reported to the FBI that same day, and that no arrest has been made, and that the investigation of this alleged statement has been obstructed by Lucy and attorney, Thomas W. Smith.  (Id.)  Plaintiff also alleges that Joyce (Teddie) Hess has aided and abetted Lucy with her conspiracy to defraud and steal from her family.  (Id. at 55).

---

[1]   Plaintiff alleges that he is bi-racial and Jewish, and that his wife is Asian.

19

Plaintiff further alleges that, on or about September 7, 2003, Father Albert Alexandeunas, Pastor of St. John's Roman Catholic Church in Belle, West Virginia "promised to resolve" the dispute between Plaintiff and Lucy, and then reneged.  Plaintiff claims that this "implicates Father Albert Alexandeunas as a co-defendant and co-conspirator with defendant Lucy Florence Youell" and that "Father Albert Alexandeunas is guilty of aiding and abetting real estate fraud and stealing from the dead along with defendant Lucy Florence Youell."  (Id. at 55).  Plaintiff further alleges that Father Alexandeunas "also assisted in a felony cover-up of a massive sex crime against me."  (Id.)

From what the undersigned can garner from the Complaints, and documentation in support thereof, since the time of his brother's death, Plaintiff has filed complaints with various review boards, including a complaint against Steve's doctor with the West Virginia Medical Review Board, a complaint against Steve's pharmacist with the West Virginia Board of Pharmacy, a complaint against Lucy with the West Virginia Human Rights Commission, concerning the racial and ethnic remarks that Lucy allegedly made about Plaintiff and his wife, a complaint against attorney Thomas W. Smith with the Office of Disciplinary Counsel of the West Virginia State Bar, and a complaint with the West Virginia Ethics Commission concerning the alleged conduct of Senator Jeffrey Kessler, as well as Thomas W. Smith and Lucy, both of whom are employed in Senator Kessler's

20

office.

Plaintiff also alleges that he has requested various law enforcement investigations into the death of his brother and the theft of his brother's truck and other assets, as well as other conduct allegedly engaged in by Lucy concerning her control of Oscar Cochran's assets. Plaintiff alleges that Lucy has improperly used the influence of Senator Kessler's office, and engaged in conspiracy and collusion to obstruct justice and frustrate these investigations and media coverage of the same. (<u>Id.</u> at 56-63).

Plaintiff further alleges that, on April 6, 2004, he filed a petition in the Circuit Court of Kanawha County for the termination, revocation or modification of Lucy's appointment as Oscar's conservator/guardian. On April 21, 2004, Judge Jennifer Bailey Walker denied Plaintiff's request for certified copies of documents in that case. (<u>Id.</u> at 65). Plaintiff alleges that Judge Bailey Walker "obstructed justice by withholding crucial evidence in this case" and that the court obstructed Plaintiff's constitutional rights. (<u>Id.</u>) Plaintiff subsequently moved to dismiss that petition because he believed that his "constitutional rights had been violated." (<u>Id.</u> at 70).

Plaintiff further alleges that, on or about June 1, 2004, Lucy "fraudulently" sold Steve's property at 5729½-A Midland Drive for the sum of $6,000, without Oscar's consent and knowledge, and despite Plaintiff's offer to buy the house. (<u>Id.</u> at 65).

21

Plaintiff also alleges that, in November of 2004, Lucy sold Oscar's house at 5729 Midland Drive in Charleston, without Oscar's consent, and that she did not turn the money over to Oscar, or to the nursing home to cover his expenses there. (Id. at 68).

Based upon the sale of these two properties, Plaintiff alleges that Lucy has committed "real estate fraud." (Id.) Without alleging any specific facts to support his claim, Plaintiff also alleges that Lucy has committed medicaid, medicare and welfare fraud. (Id. at 69). Plaintiff further alleges that Lucy has not reported the additional income from the sale of the properties to the Internal Revenue Service or to the Social Security Administration. (Id.) Plaintiff states that he has reported Lucy to both of those agencies and that she is under investigation by them. (Id. at 70).

Plaintiff alleges that "CO-DEFENDANT, UNCLE AND VICTIM OSCAR LEE COCHRAN *HAS BEEN* TOTALLY AND 100% *STRIPPED* OF EVERY PENNY AND PIECES OF PROPERTY THAT HE OWNED!!" (Id. at 58). Plaintiff further alleges:

> THIS PROVES THAT THE DEFENDANT LUCY FLORENCE YOUELL FULLY INTENDED TO DEFRAUD HER BROTHER OSCAR LEE COCHRAN AND EVERYONE ELSE IN THE FAMILY. DEFENDANT LUCY FLORENCE YOUELL KEPT, SOLD AND DESTROYED PERSONAL AND VALUABLE PROPERTIES THAT BELONGED TO SEVERAL FAMILY MEMBERS INCLUDING THE PLAINTIFF AND THE BROTHERS OF THE PLAINTIFF.

(Id.) Plaintiff also alleges that, while cleaning out Oscar's house, she discovered the urn containing Steve's remains and that

22

she flushed the ashes down the toilet.  (Id.)

Although there appear to be some typographical errors in the Complaint, Plaintiff's first Complaint contains an excerpt from Oscar Cochran's Last Will and Testament, dated September 23, 1996. According to Plaintiff, the will named Steve as the primary beneficiary (after Oscar's wife, Peggy, who the undersigned presumes to be deceased, since she is not mentioned anywhere in the Complaint).  The will states that, should Steve not survive him, then Oscar's estate would be distributed with 50% going to Lucy, and 50% going to Marian Cochran.  (Id. at 72-73).  Plaintiff alleges that Lucy discovered the will in Oscar's house three months before Steve's death.  (Id.)  Plaintiff also alleges that Lucy stole Marian's 50% of the estate.  (Id. at 74).

<u>Allegations in Second Complaint</u>

Plaintiff has requested that the allegations contained in his first Complaint against clergy members of the Roman Catholic Church concerning the alleged cover-up of sexual abuse by priests be merged with the allegations concerning the same, as made in his second Complaint (Case No. 2:07-cv-00041).  To be clear, Plaintiff has named the following clergy members as defendants in his second Complaint: Reverend Paul Fahey (deceased), former pastor of St. John's Roman Catholic Church in Belle, West Virginia, Reverend Father (Pastor) Albert Alexandeunas, pastor, St. John's Roman Catholic Church, Belle, West Virginia, Reverend Father Colin

Donohue, O.F.M. Capuchin, former pastor of Sacred Heart Co-Cathedral, Charleston, West Virginia, Reverend Father (Pastor) Edward Sadie (now Monsignor Sadie), pastor of Sacred Heart Co-Cathedral, Charleston, West Virginia, Bishop Michael Bransfield, Bishop of the Roman Catholic Diocese, Wheeling West Virginia, Father John Gallagher, St. Alphonse, Wheeling, West Virginia, Father Fred Annie, the Roman Catholic Diocese, Wheeling, West Virginia, Reverend Father John Pfannenstiel, the Capuchin-Franciscan Order, Province of St. Augustine, Pittsburgh, Pennsylvania, the Eminence Cardinal William Keeler, the Roman Catholic Arch-Diocese, Baltimore, Maryland, and His Holiness the Pope, Benedict XVI (Father Joseph Ratzinger), The Holy See, Vatican City, Italy.  Plaintiff has also named the individual churches where these priests preside, and the Roman Catholic Church, itself, as "non-defendant racketeers."

Plaintiff's second Complaint alleges that these defendants have "implicated and violated federal racketeering and conspiracy laws which constitutes the federal RICO Act via inter-state communications, inter-state wire, obstruction of justice, interference of official investigations, concealing felony crimes, real estate fraud, pedophelia, sodomy, rape, sexual assault and molestation of a child." (Case No. 2:07-cv-00041, # 2 at 3).  On another page of the second Complaint, Plaintiff alleges that the "felonious crimes" committed against him are fraud, embezzlement,

conspiracy, collusion, cover-up, abuse of a minor child, pedophelia, rape of a minor child, causing extreme torture and havoc in the complaintant's [sic; complainant's] juvenile and adult life and mental anguish." (Id. at 6).

In the second Complaint, Plaintiff again alleges that his aunt Lucy "conspired and colluded in the murder of Steven Mark Merritt on June 11, 2003," that she "stole and illegally sold the property of Steven Mark Merritt in June of 2004, and that "[t]his property by rights should have been the estate to the brothers of Steven Mark Merritt." (Id.)

As noted previously, Plaintiff alleges that, in June of 2004, in the process of seeking the assistance of Father Edward Sadie and Father Albert Alexandeunas in the resolution of the dispute between Plaintiff and his aunt Lucy, Plaintiff recalled a suppressed memory of having been sexually abused by Father Colin Donohue and Father Paul Fahey, when Plaintiff was between the ages of 15 and 17. Father Donohue was a pastor at Sacred Heart Co-Cathedral, and Father Fahey was the pastor of St. John's Church, in Belle, West Virginia. Plaintiff alleges that he completed his catechism at, and attended, both churches. (Id. at 7-8).

Plaintiff further alleges that, upon the recollection of this suppressed memory, he notified Father John Gallagher at the Catholic Diocese in Wheeling, West Virginia, of the alleged abuse by these priests. As noted previously herein, Father Fahey is

25

deceased and Father Donohue has left the priesthood. (<u>Id.</u> at 8).
Plaintiff alleges that Father Donohue left under "extreme mystery."
(<u>Id.</u>)   Plaintiff alleges that Father Gallagher told him that "he
was in charge of investigating priests committing sexual crimes in
the United States" and that Father Gallagher allegedly offered
Plaintiff psychological counseling, which never occurred.

Plaintiff further alleges that, after informing Father Fred
Annie in Wheeling, West Virginia, and Father John Pfannenstiel in
Pittsburgh, Pennsylvania, of the alleged sexual abuse by the two
priests, and the alleged lying, slander, fraud and conspiracy
engaged in by Father Sadie and Father Alexandeunas, these priests
did nothing more than offer to visit with Plaintiff and send him
some literature on sexual abuse committed by priests. (<u>Id.</u> at 9-
10).

Plaintiff's allegations against Bishop Bransfield, Cardinal
Keeler, and the Popes (in the body of the Complaint, Plaintiff adds
allegations concerning Pope Pius X and Pope John Paul II, who are
deceased) simply state that they are responsible for the crimes and
improprieties of their clergy. (<u>Id.</u> at 10).

Plaintiff also alleges that Lucy and Father Sadie engaged in
slander and defamation of character because Lucy told Father Sadie
that Plaintiff "is a crazy from New York and using drugs and
alcohol." (<u>Id.</u> at 7). Plaintiff denies that he has ever sought
mental health care, "except for sexual abuse by priests" and that

he is not (presently) addicted to drugs or alcohol. (Id.)
Plaintiff further alleges that Father Sadie helped Lucy "defraud
the complainant for profit in the sale of the [home of]
complainant's deceased brother Steven Mark Merritt." (Id.)

### Plaintiff's requests to amend complaints

On March 21, 2007, Plaintiff filed an "Emergency Addendum
Motion" (Case No. 2:06-cv-00885, ## 12, 15-2; Case No. 2:07-cv-
00041, ## 14; 17-2)[2], in which Plaintiff requested, inter alia,
that the following individuals or entities be added as defendants:
(1) the Charleston, West Virginia FBI Field Office, (2) Special
Agent in Charge Joe Ciccarelli, (3) Special Agent Steve Viglianco,
(4) Special Agent Brian Selby, (5) the FBI Field Office in
Pittsburgh, Pennsylvania, (6) Special Agent in Charge Ray Morrow of
the FBI Field Office in Pittsburgh, Pennsylvania. Plaintiff claims
that these individuals and entities "scoffed at the plaintiff's
criminal report and colluded and conspired with the perpetrator
Lucy Florence Youell and et al to cover-up the felony crime [of
telephonic death threats]." Plaintiff's motion states:

This was a clear case of the FBI violating the

_____

[2] The motions in each case differ slightly, but the court
will treat them collectively as requests to add defendants, and
will cite to a specific document where possible. On June 13,
2007, Plaintiff filed an additional motion to change venue in
each case, which had these same "Emergency Addendum Motions"
attached to it. (Case No. 2:06-cv-00885, # 15-2; Case No. 2:07-
cv-00041, # 17-2). The undersigned will not reference the page
numbers in documents ## 15-2 and 17-2 from this point forward, as
they are redundant.

plaintiff's constitutional and civil rights to justice as a victim to crime.  This injustice committed by the FBI in Charleston, West Virginia with collusion and conspiracy with Lucy Florence Youell and et al not only violates the United States Constitutional and civil rights of the plaintiff - but also involves felony crimes of obstruction of justice (Code 18, USC 1510), First Amendment rights and civil rights (US Code Title 28, Section 994 Hate/Bias Crimes.[3]  The Plaintiff also reported to the FBI and other federal agencies (i.e. HUD) regarding racial discrimination of felony crimes with housing.  Plaintiff was called and refused housing based on "we don't want any niggers living on our property." Debbie Man wife of plaintiff was told "We don't want any chincs living on our property."  The plaintiff was also told "Furthermore, we don't want any f***ing Jews living on our property."  The above three quotes made by Lucy Florence Youell on July 13, 2003, in the presence of ten or more witnesses - some of these remarks were made inside of a church.  The Charleston, West Virginia FBI did nothing!  The FBI Field Office in Pittsburgh, Pennsylvania located at 3311 [E]ast Carlson Street, Pittsburgh, Pennsylvania 15203 also violated the plaintiff's rights by not taking the report and arresting the appropriate parties and not investigating the Charleston, West Virginia FBI Field Office.

(Case No. 2:06-cv-00885, # 12 at 3-4).  Plaintiff repeats his request to add the West Virginia FBI officials as defendants in a motion filed on July 16, 2007.  (Case No. 2:06-cv-00885, # 23).

Plaintiff has also requested that the following individuals be added as defendants:  (7) West Virginia Secretary of State Betty

---

[3]  This code section, cited repeatedly by Plaintiff, concerns the duties of the United States Sentencing Commission and has nothing to do with "hate crimes."  Thus, the undersigned cannot discern what "hate crimes" law Plaintiff is relying on. Concerning Plaintiff's claim of racial discrimination in housing, the undersigned presumes that plaintiff is relying upon the Fair Housing Act, 42 U.S.C. § 3601 et seq.  As will be discussed further, infra, the crimes described in these statutes are not enumerated acts of "racketeering activity" under 18 U.S.C. § 1961.

Ireland, (8) Chief Investigator Brian Cummings, (9) Dan Kimble, Esquire, (10) Investigator Sam Butcher. Concerning these individuals, Plaintiff alleges:

> These defendants have colluded and conspired to conceal and cover-up felony fraud committed by Patty J. Sims with her use of a West Virginia state notary seal. The fraudulent and felony misuse of this notary seal has cost the plaintiff extreme grief and made the plaintiff a victim of crime.

(Case No. 2:06-cv-00885, # 12 at 4). Plaintiff further seeks to add the following defendants: (11) Patty J. Sims (former employee of the Heartland Nursing Home and Notary Public) [who was listed as a defendant in the original complaint], (12) Karen Lawson (former Director of the Heartland Nursing Home), and (13) the Heartland Nursing Home, Inc. About these proposed defendants, Plaintiff states:

> The felony fraud committed by Patty J. Sims notarizing fraudulent documents which was aided and abetted by former Director Karen Lawson of the Heartland Nursing Home Inc. This also made Heartland Nursing Home totally responsible and accountable for these crimes which was under the direction of Lucy Florence Youell. The purpose of the fraud was to make Lucy Florence Youell a fraudulent power of attorney over her brother Oscar Lee Cochran in order to commit felony theft against plaintiff and plaintiff's family. These fraudulent documents are recorded in the Kanawha County Courthouse on December 8th, 2000, Book 74, Page 631 and December 2nd, 2002, Book 79, Page 51 as evidence.

(Id. at 4, 6).

Plaintiff also seeks to add the following as defendants: (14) Robert P. Howell, Esquire, and (15) notary Carolyn Seafler, whom he claims:

29

were both involved in a fraudulent real estate
transaction for Lucy Florence Youell, who stole and sold
the property of my deceased brother Steven Mark Merritt
[as demonstrated by a deed which] is recorded in the
Kanawha County Courthouse Deed Book 2615, Page 274, sold
on June 14, 2004 to Jack Spencer.

(Id. at 6).

Plaintiff also seeks to add the following as defendants: (16)
the West Virginia State Police, South Charleston, (17) Col. David
Lemmon, (18) Capt. G. Barnett, (19) First Sgt. R.W. Lively, and
(20) Trooper J. Garnes.  Concerning these defendants, Plaintiff
alleges:

The above mentioned defendants have violated the
plaintiff's United States Constitutional and civil rights
- both federal and state.  The violation of laws include
not taking a police report, protecting a citizen, not
making an arrest, concealing crimes, cover-up, collusion,
conspiracy, medicaid fraud (State Code - Section 17,
Public Law 95-142, Federal Code 42 USC 1320 D-6),
obstruction of justice (Code 18 USC 1510), First
Amendment right, civil rights (United States Code Title
28 Section 994 Hate/Bias Crimes), failure to investigate
and arrest Lucy Florence Youell and et al for felony
crimes against Plaintiff and Plaintiff's family and
failure to investigate and arrest those involved in the
concealment and cover-up of the rape and sexual assault
of a child by pedophile priests.

(Case No. 2:06-cv-00885, # 12 at 6-7; Case No. 2:07-cv-00041, # 14
at 3).

Plaintiff also seeks to add the following defendants: (21)
West Virginia Department of Health and Human Resources, (22) Martha
Walker, Cabinet Secretary, (23) Inspector General Molly Jordan,
(24) Nancy Sarver, secretary to Molly Jordan, (25) Sam Cooke of the
Medicaid Fraud Unit, and (26) Jill Lynn of the Medicaid Fraud Unit.

Concerning these proposed defendants, Plaintiff alleges:

> The above mentioned defendants aided and abetted the co-defendant Lucy Florence Youell by concealing and covering-up felony crimes [of] medicaid fraud on her brother Oscar Lee Cochran, which provided the pathway that allowed Lucy Florence Youell to steal multi-thousands of dollars from her family and mainly the good law abiding citizens of West Virginia, - this conspiracy and collusion allowed the plaintiff severe [?] to fall victim to her crimes.  When the plaintiff did in fact make a complaint to the above-mentioned defendants, - it was made obviously that there was a conspiratorial involvement with Lucy Florence Youell and the above said defendants.  The defendant used Senator Jeffrey Kessler to obstruct this investigation that the plaintiff made against her with the West Virginia Department of Health and Human Resources and other law enforcement agencies.

(Case No. 2:06-cv-00885, # 12 at 7).

Plaintiff also seeks to add the following as defendants: (27) Office of the Kanawha County Prosecuting Attorney, (28) William J. Sharnock [sic; Charnock], former Kanawha County Prosecutor, (29) Jerry Riffe, Investigator.  Against these proposed defendants, Plaintiff alleges:

> The above mentioned defendants have failed to administer their jobs and dutie [sic; duty] according to law as elected and/or appointed government officials.  The Kanawha County Office of the Prosecutor has either failed and/or obstructed justice by not having Lucy Florence Youell arrested, indicted and/or prosecuted as an ordinary citizen.  It appears to be obvious that the prosecutor's office may have been unduly influenced by Lucy Florence Youell's employer Senator Jeffrey Kessler.  The prosecutor's office has violated the United States Constitutional and civil rights of the plaintiff by not prosecuting Lucy Florence Youell on the following crimes: grand larceny, murder, conspiracy, false pretenses, uttering, grand larceny (West Virginia) Chap 61 Article 5 Sec 17, medicaid fraud Code Section 17, Public Law 95-142, Federal Code 42 USC 1320 D-6, obstruction of justice Code 18 USC 1510, First Amendment right, civil rights US

31

Code Title 28 Section 994 Hate/Bias Crimes.[4]  The Kanawha
County Prosecutor Office is accused of selective
prosecution and persecution.   It is also accused of
giving a total license and immunity to a known publicly
accused criminal (Lucy Florence Youell) to commit crime!

(Case No. 2:06-cv-00885, # 12 at 8; Case No. 2:07-cv-00041, # 14 at

4).

Plaintiff also seeks to add the following defendants: (30) the

West Virginia State Agency for Adult Protective Services, (31)

Anita Adkins, Director, (32) Susan Layne, Supervisor, and (33)

Kevin Loy, Case Worker (deceased).   Concerning these proposed

defendants, Plaintiff alleges:

The above-mentioned defendants failed to do their jobs by
being influenced and/or wrongfully persuaded by Lucy
Florence Youell and Senator Jeffrey Kessler.  If this
agency and defendants had investigated the complaint made
by the plaintiff several years ago that alleged "that
Lucy Florence Youell was abusing, exploiting and stealing
from her brother Oscar Lee Cochran" - the heinous crimes
would never have been committed and even my brother
Steven Mark Merritt would be alive today!  Also, Oscar
Lee Cochran would not be abandoned in Heartland Nursing
Home with everything he owned stolen from him by his
sister Lucy Florence Youell.

(Case No. 2:06-cv-00085, # 12 at 9).

Plaintiff also seeks to add the following defendants: (34) the

West Virginia Office of Lawyer Complaint and Disciplinary Review

Board [properly named as the Office of Disciplinary Counsel], and

(35) Director Lawrence J. Lewis, Esquire [Chief Disciplinary

---

[4] The undersigned notes that the county prosecutor cannot
charge or prosecute a person on federal crimes.  That is the
responsibility of the United States Attorney for the appropriate
district court.

32

Counsel].  Concerning these defendants, Plaintiff alleges:

> This agency and the director participated in a felony cover-up.  The plaintiff filed complaints with this agency against Thomas W. Smith, Esquire, for unethical, immoral and illegal acts against the plaintiff on the behalf of his client Lucy Florence Youell, whom Thomas W. Smith represented in a conflict of interest.  This defendant violated both state and federal laws to threaten and harass the plaintiff without any regard or respect to the laws that the defendant was employed to engage by his oath as an attorney.

(Id. at 9).

Plaintiff also seeks to add the following defendants: (36) the West Virginia Medical Complaint Review Board, (37) Director John Wade, M.D., (38) the West Virginia Pharmaceutical Complaint Review Board, (39) Director George Karos, (40) the Medicine Shop, (41) Don Neurmann, Owner of the Medicine Shop, (42) Fred Wagner, Investigator, and (43) Bob Blair, Investigator.  Concerning these proposed defendants, Plaintiff alleges:

> These defendants violated the plaintiff by participating in a massive felony concealment and cover-up of a murder and the conspiratorial facts to commit this murder of my late brother Steven Mark Merritt on June 11, 2003, by his doctor Lawrence B. Kelly.

> These defendants violated the plaintiff by participating in a massive felony concealment and cover-up to illegally and wrongfully commit Oscar Lee Cochran to Heartland Nursing Home via fraudulent papers by his sister Lucy Florence Youell.  This lack of, inept, asinine, immoral and illegal action of the Physicians Complaint Review Board enabled Lucy Florence Youell to get away scott free with murder and grand larceny!

(Id. at 10).

Plaintiff also seeks to add (44) Senator Jeffrey Kessler, (45) the office of Senator Jeffrey Kessler, and (46) the State of West Virginia as defendants. (Case No. 2:06-cv-00885, # 15-2 at 4; Case No. 2:07-cv-00041, # 14 at 4; # 17-2 at 4).

From each of these proposed defendants, Plaintiff seeks punitive damages in the sum of not less than ten million dollars. Plaintiff's first Complaint also states that he seeks one hundred thousand dollars in "actual" damages. However, the RICO statute provides that a successful plaintiff is entitled to treble damages (three times the damages he or she can prove) and his or her costs and fees. 18 U.S.C. § 1964(c).

In documents filed in both cases by Plaintiff on April 16, 2007, Plaintiff states that he is "now adding and filing slander charges against Lucy Florence Youell and et al defendants listed in this case. Agencies are obviously excluded." (Case No. 2:06-cv-00885, ## 28 and 29 at 6; Case No. 2:07-cv-00041, ## 25 and 26 at 6). In those same documents, Plaintiff states that "another civil charge of 'Post Traumatic Stress Disorder' will be added on to the civil charges and injuries." (Id. at 7-8). Plaintiff does not allege any specific facts in support of these new claims, and presumably relies upon allegations previously made in his Complaints.

In this same document, Plaintiff alleges that "Jim Haught [the Editor of the Charleston Gazette] and an unknown reporter have been

34

attempting to 'bad mouth' and/or slander me by stating to certain persons of prominence that I, the plaintiff 'am mental.'" (<u>Id.</u> at 8).

## <u>ANALYSIS</u>

### A.   **Plaintiff's Complaints Fail To State A Claim Upon Which Relief Can Be Granted Under the Civil RICO Statutes.**

The civil RICO statutes set forth a sophisticated standard of liability which requires particular and detailed pleadings.  The allegations in both of Plaintiff's Complaints fail to satisfy the essential elements of a civil RICO claim under either 18 U.S.C. § 1962(c) or (d).  As noted by the United States Court of Appeals for the Fourth Circuit:

> To prove a violation of § 1962(c), [plaintiff] must show that <u>each</u> RICO defendant conducted an enterprise through a pattern of racketeering activity, <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496, 105 S. Ct. 3275, 3284, 87 L.Ed.2d 346 (1985), <u>and</u> that [plaintiff] was injured in [his] business or property as the result of such conduct. <u>See</u> 18 U.S.C. § 1962(c); <u>Sedima</u>, 473 U.S. at 496-97, 105 S. Ct. at 3284-85.  To prove a RICO conspiracy under § 1962(d), [plaintiff] must show that defendants conspired to violate § 1962(c).

> Initially, [plaintiff] must show an enterprise, which is defined as an ongoing organization, formal or informal, in which the various associates function as a continuing unit.  <u>United States v. Turkette</u>, 452 U.S. 576, 583, 101 S. Ct. 2524, 2528, 69 L. Ed.2d 246 (1981).  The enterprise must be distinct from the persons alleged to have violated § 1962(c).  <u>New Beckley Mining Corp. v. International Union, United Mine Workers of America</u>, 18 F.3d 1161, 1163 (4th Cir. 1994); <u>Busby v. Crown Supply, Inc.</u>, 896 F.2d 833, 840 (4th Cir. 1990); <u>United States v. Computer Sciences Corp.</u>, 689 F.2d 1181, 1190 (4th Cir. 1982).

<u>Palmetto State Medical Center, Inc. v. Operation Lifeline</u>, 117 F.3d

142, 148 (4th Cir. 1997)(emphasis added).  In <u>Palmetto</u>, the Fourth
Circuit further stated:

> To demonstrate a pattern of racketeering activity under
> 1962(c), [plaintiff] must prove that, at a minimum, each
> RICO defendant committed two acts of racketeering
> activity within a ten-year period.  18 U.S.C. § 1961(5).
> The predicate acts must be related and must amount to or
> pose a threat of continued criminal activity.  <u>See</u> <u>H.J.</u>
> <u>Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 240-43,
> 109 S. Ct. 2893, 2900-02, 106 L. Ed.2d 195 (1989).

<u>Id.</u>  As further discussed below, Plaintiff's Complaints fail to
meet these requirements.

<u>Plaintiff's standing to bring civil RICO claims</u>

Before addressing these specific elements in Plaintiff's
Complaints, the court must first address whether Plaintiff has
standing to bring these RICO lawsuits.  Furthermore, the right to
sue under the RICO treble damages provision requires a showing that
the defendant's violation was a "proximate cause" of the
Plaintiff's alleged injury.  <u>Holmes v. Securities Investor</u>
<u>Protection Corp.</u>, 503 U.S. 258, 268 (1992).  "Proximate cause
requires a direct relation between the conduct alleged and the
injury asserted.  <u>Id.</u>  As the <u>Holmes</u> court noted:  "a plaintiff who
complained of harm flowing merely from the misfortunes visited upon
a third person by the defendant's acts was generally said to stand
at too remote a distance to recover."  <u>Id.</u> at 269.

Without being able to show an injury in fact that is directly
traceable to the conduct of the defendants, Plaintiff does not have
standing to bring these lawsuits.  <u>See</u> <u>Allen v. Wright</u>, 468 U.S.

36

737 (1984); see also Firestone v. Galbreath, 976 F.2d 279, 285 (6th Cir. 1992).

In Firestone, the grandchildren of Dorothy Bryan Firestone, who were heirs to the Firestone tire fortune, sued the stepchildren from Dorothy's second marriage (hereinafter "the Galbreaths"), alleging that the Galbreaths had been looting Dorothy's estate. The complaint filed by the Firestone grandchildren contained numerous charges of fraud, tort claims, and RICO violations involving, inter alia, transfers of two pieces of property that Dorothy owned.  976 F.2d at 282.

Concerning the RICO claims, the Sixth Circuit found that the grandchildren lacked standing to bring an individual RICO claim because they had not suffered a direct injury.  Specifically, the court held:

> The Grandchildren allege that by stealing from their grandmother during her lifetime, the defendants decreased the size of Dorothy Galbreath's estate, and consequently the size of their inheritance.  This is only an indirect injury because any harm to the Grandchildren flows merely from the misfortunes allegedly visited upon Dorothy Galbreath by the defendants.  See Holmes, 503 U.S. at ___, 112 S. Ct. at 1318.  The estate suffered the direct harm; it, not the Family Trust, lost the property. Consequently, the Grandchildren lack standing to bring an individual RICO claim, and the district court correctly dismissed it.

Id. at 285.

Likewise, Plaintiff does not have standing to bring a RICO action on behalf of anyone other than himself.  Thus, any allegations concerning Lucy's, or any one else's, actions taken

against Steven Mark Merritt, Oscar Cochran, or any person other than Plaintiff, as alleged in Plaintiff's Complaints, can only be used to determine whether there was a violation of section 1962 that directly caused injury to <u>Plaintiff's</u> interest in business or property.

Plaintiff has not alleged that he has any business interest that has allegedly been harmed by the actions of any of the defendants.  In fact, in his documents, Plaintiff asserts that he is "totally disabled" and receiving social security disability income.  Thus, the court must only determine whether Plaintiff has suffered an injury to a tangible property interest.

Plaintiff's only allegations concerning his own loss of property are rooted in Lucy's alleged sale of the property that, at one time, belonged to Plaintiff's brother, Steve.  Plaintiff's claim, however, turns on whether he had a legal interest in that property.  Based upon the allegations contained in the Complaints, Oscar Cochran, rightfully or not, obtained a survivorship conveyance from Steve on that property.  Thus, upon Steve's death, the ownership of that property passed to Oscar.  Nowhere has Plaintiff alleged that he had a legal present or future interest in that property.  Therefore, any direct injury suffered as a result of Lucy's conduct was suffered by Oscar, not Plaintiff.

Accordingly, Plaintiff cannot show a direct injury to his property interest.  Therefore, the undersigned proposes that the

presiding District Judge **FIND** that Plaintiff does not have standing to bring these RICO claims.

<u>Failure to properly allege required elements of RICO claims</u>

Plaintiff's Complaints fail to state a claim upon which relief can be granted for other reasons as well.  As noted above, with regard to each defendant, Plaintiff must allege: "(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that he [or she] participated, either directly or indirectly, in the conduct of the affairs of the enterprise; <u>and</u> that he [or she] participated through a pattern of racketeering activity, i.e., through the commission of at least two racketeering acts." <u>Eaby v. Richmond</u>, 561 F. Supp. 131, 134 (E.D. Pa. 1983).

Both of Plaintiff's Complaints fail to properly allege the existence of an enterprise that affected interstate commerce, and whether or how each defendant is associated with the enterprise. As discussed by the United States Supreme Court in <u>United States v. Turkette</u>, a RICO "enterprise" is a "group of persons associated together for a common purpose of engaging in a course of conduct," which is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." 452 U.S. 576 (1981). The United States Court of Appeals for the Fourth Circuit has also held that "a RICO enterprise is characterized by 'continuity, unity, shared purpose,

and identifiable structure.'" <u>United States v. Fiel</u>, 35 F.3d 997, 1003 (4th Cir. 1994).

While the undersigned may assume that Plaintiff intended that each person named in his Complaints be considered part of the "enterprise," through which the alleged racketeering activity occurred, sections 1962(c) and (d) require that the "person," meaning the defendant, and the "enterprise" be distinct from one another. <u>See</u> <u>B.F. Hirsch v. Enright Ref. Co., Inc.</u>, 751 F.2d 628, 634 (3d Cir. 1984). Thus, the individual defendants cannot be considered to be the enterprise.

Furthermore, Plaintiff's Complaints only vaguely identify the "racketeering activity" in which each defendant has allegedly engaged, and he has not specifically identified what he considers to be the "pattern of racketeering activity" engaged in by each defendant. "'The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d).'" <u>Hall v. Tressic</u>, 381 F. Supp.2d 101, 108 (N.D.N.Y. 2005)(quoting <u>United States v. Persico</u>, 832 F.2d 705, 714 (2d Cir. 1987)).

The United States Supreme Court has held that "the predicate acts must be related and must be part of a continuous criminal endeavor." <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479 (1985). "'The pattern requirement was intended to limit RICO to

40

those cases in which racketeering acts are committed in a manner characterizing the defendant as a person who regularly commits such crimes.'" International Data Bank, Ltd. v. Zepkin, 812 F.2D 149, 155 (4th Cir. 1987)(quoting Lipin Enterprises v. Lee, 803 F.2d 322, 324 (7th Cir, 1986)).

Upon review of both of Plaintiff's Complaints, and construing the complaints liberally, as the court must, at best, Plaintiff has alleged that Lucy Florence Cochran-Youell has engaged in the following types of "racketeering  activity," as enumerated in 18 U.S.C. § 1961[5]: mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; financial institution fraud, in violation of 18 U.S.C. § 1344; obstruction of justice, in violation of 18 U.S.C. § 1503; obstruction of criminal investigations, in violation of 18 U.S.C. § 1510,; obstruction of state or local law enforcement, in violation of 18 U.S.C. § 1511; tampering with a witness or informant, in violation of 18 U.S.C. § 1512; use of interstate commerce facilities in the commission of murder for hire; various controlled substances offenses, in violation of Title 21 of the United States Code, and state law crimes of murder or murder for hire, extortion, and fraud.

---

[5] Plaintiff has made allegations that Lucy and others have committed "hate crimes," and engaged in housing discrimination, and other alleged violations that do not fall under the categories of crimes enumerated in section 1961.  The court will not address these other alleged crimes, as they cannot form the predicate acts that will support a civil RICO claim.

However, as discussed above, Plaintiff has not sufficiently alleged that Lucy's conduct was the proximate cause of an injury to Plaintiff's property.

Moreover, Plaintiff has further alleged only generally that the other defendants named in the Complaints, and those named in Plaintiff's request to amend his Complaints, were part of a conspiracy to either engage in those crimes with Lucy or to cover-up those crimes. Significantly, where a plaintiff "has not alleged a legally sufficient substantive RICO claim, his RICO conspiracy claim cannot survive." Hall, 381 F. Supp. 2d at 112. Thus, if Plaintiff's claims against Lucy cannot survive, neither can his conspiracy claims.

Conspiracies described in sweeping or general terms, such as those described in Plaintiff's Complaints, cannot serve as the basis for a RICO cause of action. See Eaby, 561 F. Supp. at As noted in Eaby, "[i]n order to properly allege a conspiracy, plaintiffs must assert that each defendant so charged has by his words or actions . . . objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes." 561 F. Supp. at 137 (emphasis in original).

The numerosity of the defendants named and the conclusory allegations made in his Complaints and other documents undermine Plaintiff's claims. In essence, it appears that every person or

42

entity identified as a "racketeer" in Plaintiff's Complaints and other documents has been named simply because they have not acted the way Plaintiff wanted them to, not because they have joined together to act unlawfully.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has not sufficiently alleged the essential elements of a civil RICO claim against each of the defendants named in Plaintiff's Complaints, or those he has named in his requests to amend his complaints.

Furthermore, Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud must be pled with particularity, detailing the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme. Fed. R. Civ. P. 9(b); see also Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991). To the extent that Plaintiff has attempted to allege that any of the defendants has engaged in "fraud," his Complaints do not sufficiently include such details.

A plaintiff alleging fraud also "must have justifiably relied to his detriment on the defendant's material misrepresentation." Chisolm v. TranSouth Financial Corp., 95 F.3d 331 (4th Cir. 1996). Plaintiff has not specifically alleged that he justifiably relied to his detriment on any defendant's material misrepresentations.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaints fail to state a

fraud claim upon which relief can be granted under the RICO Act against any of the named defendants, or those named in Plaintiff's requests to amend his complaints.

<u>Government entities cannot be named as defendants</u>

Although the United States Supreme Court has yet to address the issue of whether federal, state or local governmental entities may violate the RICO Act, all of the Circuit Courts of Appeal that have addressed the issue have generally found that governmental entities cannot be named as defendant persons under the RICO Act. <u>See</u>, *e.g.*, <u>Pedrina v. Chun</u>, 97 F.3d 1296, 1300 (9th Cir. 1996)("governmental entities are incapable of forming [the] malicious intent" necessary to support a RICO action"); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991)("there can be no RICO claim against the federal government"); <u>Brown v. Nationsbank Corp.</u>, 188 F.3d 579, 587 (5th Cir. 1999)(FDIC, as a federal agency, could not be sued under RICO; and implying that neither could FBI); <u>Southway v. Central Bank of Nigeria</u>, 198 F.3d 1210, 1215 n.5 (10th Cir, 1999)("In <u>Berger</u>, the Sixth Circuit correctly held that a federal agency was not subject to a civil RICO claim").

Accordingly, Plaintiff's attempt to add the FBI or its field offices in Charleston, West Virginia and Pittsburgh, Pennsylvania, as defendants herein fails as a matter of law.  The same is true for Plaintiff's attempts to add the State of West Virginia, the West Virginia Department of Health and Human Resources, the Adult

44

Protective Services agency, the Medicaid Fraud Unit, the Office of Lawyer Disciplinary Counsel, the West Virginia Medical Review Board, the West Virginia Pharmaceutical Complaint Review Board, the West Virginia State Police, and the Kanawha County Prosecutor's Office.

Furthermore, a suit against a state or a state agency for money damages is barred by the Eleventh Amendment to the United States Constitution.  Accordingly, the state governmental entities named in Plaintiff's Complaints are immune from suit.

Accordingly, to the extent that Plaintiff has moved to have these governmental entities added as defendants herein, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaints fail to state a claim against those entities.  Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's requests to amend his Complaints to add those entities as defendants.  (Case No. 2:06-cv-00885, ## 12, 15-2 and 23; Case No. 2:07-cv-00041, ## 14 and 17-2).

**B.    Plaintiff's Complaints Fail To State A Claim Upon Which Relief Can Be Granted Against the Roman Catholic Church And Its Clergy Members.**

Both of Plaintiff's Complaints also allege that various members of the clergy of the Roman Catholic Church (hereinafter collectively referred to as the "church defendants") have violated the civil RICO provisions by engaging in a cover-up of the sexual abuse of Plaintiff by two priests in Charleston, West Virginia.

45

Plaintiff's Complaints specifically allege that Father Edward Sadie and Father Albert Alexandeunas, against whom Plaintiff has also alleged additional claims of "real estate fraud" and collusion based upon their involvement in the property dispute between Plaintiff and Lucy Florence Cochran-Youell, participated in the cover-up of his sexual abuse by two other priests who were formerly assigned to their churches in Charleston.

Plaintiff's second Complaint also makes blanket allegations that Bishop Michael Bransfield, the present Bishop of the Wheeling-Charleston Diocese of the Roman Catholic Church, Cardinal William Keeler, former Popes Pius X and John Paul II, and current Pope Benedict XVI are "100% responsible for the crimes and improprieties of [their] clergy...." (2:07-cv-00041, # 2 at 10). Plaintiff's second Complaint further states that "the Church and Its' hierarchy is under suit only for conspiracy, collusion, cover-up and not fore-warning Its' members about pedophile priests in Its' midst that could inflict harm upon children." (Id. at 11).

Even construing Plaintiff's second Complaint liberally, as the court must, and taking all of the allegations contained therein as true, none of those allegations is sufficient to support a claim under the civil RICO statutes. Plaintiff has not alleged that the conduct of any of these persons or entities proximately caused an injury to Plaintiff's business or property.

As noted previously herein, Plaintiff must be able to establish that an alleged violation of section 1962 directly led to an injury to his business or property.  <u>Anze</u>, 126 S. Ct. at 1998. Plaintiff cannot establish that the alleged cover-up of Plaintiff's sexual abuse by two priests, many years ago, has caused any direct injury to his business or property.

As previously established, Plaintiff cannot allege or demonstrate an injury to a business interest.  Nor can Plaintiff make a causal connection between the alleged cover-up of his sexual abuse and his alleged loss of property, other than the coincidence that Father Sadie and Father Alexandeunas, who were asked to intervene in the property dispute between Plaintiff and Lucy, happened to be the pastors at the same churches where Plaintiff alleges that the sexual abuse took place.  Plaintiff's Complaints, however, do not even allege a proper civil RICO claim against Father Sadie and/or Father Alexandeunas for their conduct in the property dispute.

Plaintiff alleges that Father Sadie and Father Alexandeunas "promised to intervene" or "promised to intercede" in "the matter regarding the illegal sale of the home of the decedent Steven Mark Merritt," and that they broke those promises.  RICO claims, however, cannot be based upon broken promises or breach of contract, and Plaintiff certainly hasn't alleged or established a pattern of such activity by these two defendants.  See <u>Perlman v.</u>

47

Zell, 185 F.3d 850, 853 (7th Cir. 1999).  Therefore, Plaintiff's RICO claims against Father Sadie and Father Alexandeunas fail as a matter of law.

At best, Plaintiff can only allege emotional injury as a result of the sexual abuse and the alleged cover-up of the same. There is no direct relationship between that conduct and the alleged loss of Plaintiff's interest in his family's property. Personal injuries, such as "emotional distress" or "post traumatic stress" are not sufficient to establish a civil RICO claim.  Bast v. Cohen, Dunn & Sinclair, PC, 59 F.3d 492, 495 (4th Cir. 1995)(extreme mental anguish insufficient to confer RICO standing). "No matter the gravity of a personal injury, RICO applies only where a plaintiff demonstrates an injury to property."  Hall, 381 F. Supp.2d at 111.

Even if Plaintiff could establish that he has suffered a loss of his interest in his family's property, he cannot establish that the loss of that property was proximately caused by the alleged cover-up of his sexual abuse by the Roman Catholic Church. Therefore, the undersigned proposes that the presiding District Judge **FIND** that the allegations in both of Plaintiff's Complaints concerning this issue fail to state a claim upon which relief can be granted, and must be dismissed.

48

### C.   Without Proper Federal Claims to Consider, the Court Should Decline to Address Plaintiff's State Law Claims.

In his pleadings and other documents, Plaintiff has attempted to add several state law claims of defamation and intentional infliction of emotional distress.[6]  These claims are separate and distinct causes of action from Plaintiff's civil RICO claims. Because these claims are based upon state law, this federal court may only exercise jurisdiction over such claims under the authority of 28 U.S.C. § 1367, governing supplemental jurisdiction.

Section 1367(c)(3) provides that a district court may decline to exercise jurisdiction over claims before it on supplemental jurisdiction, where the court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  The Supreme Court has held that, "certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); see also Hall, 381 F. Supp.2d at 112.

### RECOMMENDATION

The undersigned has carefully and exhaustively reviewed all of the materials submitted by Plaintiff.  The facts alleged in these cases clearly demonstrate extreme discord between Plaintiff and his

---

[6]  Plaintiff refers to adding a claim of "post traumatic stress disorder," which is not a viable claim.  The closest type of claim available appears to be a claim of intentional infliction of emotional distress.

aunt Lucy.  Plaintiff's Complaints are replete with malevolent and spiteful statements concerning his relatives, and the statements therein bear witness to Plaintiff's intense emotions concerning his familial relations and his alleged sexual abuse.  Nothing in Plaintiff's Complaints, however, can support a viable claim under the civil RICO statutes.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** both of Plaintiff's Complaints under 28 U.S.C. § 1915(e)(2)(B), on the basis that Plaintiff's Complaints are frivolous and malicious, fail to state a claim upon which relief can be granted, and seek monetary relief from defendants who are immune from such relief.  It is further respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's requests to amend his Complaints to add additional defendants and state law claims.  (## 12, 15-2, 23, 28 and 29 in Case No. 2:06-cv-00885; ## 14, 17-2, 25 and 26 in Case No. 2:07-cv-00041).

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have ten days (filing of objections) and then three days (service/mailing), from the date of filing of this

Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff.

_____September 27, 2007_____                Mary E. Stanley
           Date                             Mary E. Stanley
                                            United States Magistrate Judge